IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KENTEYA BAYLOR

v. : Civil Action No. DKC-09-0490

CITY OF ROCKVILLE

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination and Title VII action is a motion for summary judgment filed by Defendant City of Rockville, Maryland. (Paper 14). The motion, filed on February 5, 2010, is unopposed. The court sent Plaintiff Kenteya Baylor, proceeding *pro se*, a letter dated February 9, 2010 alerting her to the motion for summary judgment and requesting a response. (Paper 15). To date, no response has been filed. The court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

**I. Background**

Plaintiff Kenteya Baylor filed a complaint on February 27, 2009, alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Paper 1). Plaintiff complains that she was "wrongfully terminated for filing a complaint on [her] immediate supervisor for sexual

assault and harassment." (Paper 1, at 2). Defendant interprets her complaint as stating claims for sexual discrimination (hostile work environment) and for retaliation. The uncontested facts are as follows.[1]

Plaintiff was hired on June 18, 2007 to work as a parking enforcement officer ("PEO") for the city of Rockville. (Paper 14, at 2). PEOs are non-union employees who are initially hired on a one-year probationary basis, like all city employees. After she was hired, she began a training program. For the first two weeks of her training, Plaintiff was supervised and trained by PEO Jerry Adams ("Adams"). (*Id*.).

On July 2, 2007, during her first two weeks of training, she and Adams stopped to have the city-owned car cleaned. While stopped at the car wash, Adams began to remove trash from the vehicle. As he was standing behind Plaintiff's side of the vehicle, Plaintiff felt Adams's hand under the seat pressing up toward her buttocks. She asked Adams what he was doing and he said he was trying to remove trash. (*Id*. at 3).

Plaintiff made a formal complaint against Adams, and Lieutenant Alan Rawlins ("Rawlins") was assigned to investigate

[1] Plaintiff's complaint contains very little information on the events that led to her filing a complaint. Defendant's memorandum supporting its motion for summary judgment fills in the facts about Plaintiff's allegations by relying on a deposition of Plaintiff and affidavits from various police officers. (Paper 14, Attachs. 2, 3 & 6).

the incident. Rawlins interviewed Plaintiff on July 5, 2007. He then interviewed Adams and several other PEOs. He requested that Plaintiff meet again with him for a second interview but she refused. (Paper 14, at 3). After his investigation was complete, Rawlins found that Adams had engaged in "Conduct Unbecoming of an Officer/Employee" and had violated the harassment prohibitions in the Procedure Manual. Adams was demoted and placed on six months of disciplinary probation. (*Id*.). Rawlins also found that Plaintiff was insubordinate by disobeying a command to conduct a second interview and by making an untruthful statement. (*Id.* at 4). The Chief of Police, Terrance Treschuk ("Treschuk"), did not sustain the untruthful statement charge but did find that Plaintiff had been insubordinate and extended her probationary period by six months. (*Id*.).

Plaintiff continued her PEO training program throughout the investigation. Beginning on August 15, 2007, Rawlins rode with Plaintiff for several hours in order to determine whether she was ready to be released from the training program. (*Id*.). Defendant notes in its memorandum that the training program usually runs for six weeks and Plaintiff was, at that point, in her ninth week. After riding with Plaintiff, Rawlins submitted a memo to Treschuk explaining that although Plaintiff could explain her responsibilities, she was deficient in a number of

areas and was not yet ready to graduate from the training program. (*Id*.). Treschuk responded by asking Rawlins to give Plaintiff a definite time in which to finish the training program, and Rawlins extended Plaintiff's training another two weeks. (Twelve weeks was the maximum time allowed). Rawlins told Plaintiff that if she hadn't improved to meet the required standards at the end of two weeks he would recommend her termination. (Paper 14, at 5). On August 27, Rawlins extended Plaintiff's training an additional week because she had been sick. (Paper 14, Attach. 6 ¶ 10).

Finally, on September 5, 2007, Rawlins told Treschuk that he recommended that Plaintiff be terminated because she was not prepared to work on her own and many job performance deficiencies remained. (*Id*. at ¶ 11). Plaintiff was terminated on September 11, 2007.

Plaintiff alleges that she was terminated because of her report of discrimination. She filed charges with the Equal Employment Opportunity Commission in September 2007 and received a right to sue letter on December 1, 2008. (Paper 1, Attach. 1).

## II. Motion for Summary Judgment

### A. Summary Judgment Standard

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp*., 477 U.S. at 324. "A mere scintilla of proof, however,

will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

**B. Analysis**

Title VII prohibits discrimination based on sex (hostile work environment), and retaliation by an employer against an employee who exercises her Title VII rights. *See* 42 U.S.C. §§ 2000e-2 and 2000e-33.

To prevail on her hostile work environment claim, Plaintiff must show that

> (1) the harassment was unwelcome; (2) the harassment was based on his [or her] race [or sex]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of the employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

*Wang v. Metropolitan Life Insurance Co*., 334 F.Supp.2d 853, 862 (D.Md. 2004)(citing *Mackey v. Shalala*, 80 F.3d 954, 959 (4th Cir. 1996)).

> Courts determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its

> severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2005)(omitting internal citations)(citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). The facts alleged in this case do not rise to the level of a hostile work environment, and assuming, *arguendo*, that they do, the employer took effective remedial action and is therefore not liable.

Plaintiff can fulfill the first two requirements of the test, but neither three nor four is satisfied by the facts. First, the actions appeared to be discrete rather than pervasive. In addition to the July 2 incident at the car wash, in her deposition Plaintiff also testified that Adams had made comments to her regarding engaging in a "threesome." (Paper 14, Attach. 2, at 90). Aside from the "threesome" comments (which apparently happened twice) and the car wash incident, Plaintiff makes no other allegations of sexual misconduct. The harassment did not appear to interfere with Plaintiff's work performance. It is also not clear that requirement four –imposing liability on the employer – has been satisfied. Employers cannot be held liable for the isolated remarks of employees unless the employer "knew or should have known of the harassment, and took no

effectual action to correct the situation." *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir. 1983).

Finally, even if Plaintiff's evidence proves a *prima facie* case, Defendant's actions after Plaintiff reported the harassment act to rebut the liability. As soon as Plaintiff reported the harassment she was assigned to work with a different PEO, the matter was thoroughly investigated, and the harasser was eventually punished. Defendant took "prompt remedial action reasonably calculated to end the harassment." *Raley v. Board of St. Mary's County Comm'rs*, 752 F.Supp. 1272, 1279-1280 (D.Md. 1990)(internal quotations omitted). Therefore, Plaintiff's hostile work environment claim is without merit.

To establish a claim of retaliation, Plaintiff must show that: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse employment action. *Davis v. Dimensions Health Corp.*, 639 F.Supp.2d 610, 616 (D.Md. 2009); *Holland v. Wash. Homes, Inc*., 487 F.3d 208, 218 (4th Cir. 2007). "Plaintiff's burden to establish a *prima facie* case is 'not onerous' and only requires that a plaintiff prove each element by a preponderance of the evidence." *Davis,* 639 F.Supp.2d at 617(citing *Texas Dept. of Cmty; see Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If Plaintiff can make such a showing, the burden then shifts to the

employer to offer a non-discriminatory basis for the adverse employment action. *Matvia v. Bald Head Island*, 259 F.3d 261, 271 (4th Cir. 2001). "The employee then has the opportunity to prove that the asserted reason is pretextual." *Davis,* 639 F.Supp.2d at 617(citing *Matvia*, 259 F.3d at 271)(S*ee also Smith*, 202 F.3d at 248 ("The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII.")).

It is undisputed that Plaintiff suffered an adverse employment action and therefore satisfies the second requirement of the *prima facie* case: she was discharged. *See Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 775 (4th Cir. 1997) (noting that termination is an adverse employment action). Similarly, Defendant does not contest that Plaintiff engaged in a protected activity when she reported the harassment. (Paper 14, at 13). To survive summary judgment, therefore, Plaintiff must show that there was a causal link between her report and her termination. Because her discharge was not long after her complaint, a causal connection could exist – although no evidence is offered by Plaintiff to show that any connection does exist. Even if Plaintiff can establish a *prima facie* case of retaliation, Defendant satisfies its burden of showing a non-discriminatory reason for Plaintiff's discharge, and Plaintiff is unable to overcome this reason by claiming pretext. *Davis v. Dimensions Health Corp.*, 639 F.Supp.2d 610, 616 (D.Md. 2009). First,

Plaintiff was still in her initial year of employment with the City and was therefore still on her probationary period. During that period, an employee may be terminated for any lawful reason without any right of appeal. (Paper 14, Attach. 4, "Personnel Policy and Procedures Manual"). It is clear from the evidence submitted that Plaintiff was discharged because she could not fulfill her duties as PEO by the end of her training. She was allotted the full twelve weeks of training and, upon evaluation by Rawlins, found to be inadequate. The decision was therefore made to terminate her employment. No evidence is offered to contradict this finding, and therefore Plaintiff's claim of retaliation must fail.

## III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted. A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge